# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN BAXTER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N23A-11-001 PAW |
| | ) | |
| VERIZON COMMUNICATIONS, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: April 30, 2024
Decided: July 30, 2024

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Appeal from the Industrial Accident Board of the State of Delaware;*

## REVERSED AND REMANDED.

Frederick S. Freibott, Esq., of The Freibott Law Firm, P.A., *Attorney for Appellant.*

Vance E. Davis, Jr. Esq. and Christian G. McGarry, Esq., of Elzufon Austin & Mondell, P.A., *Attorney for Appellee.*

**WINSTON, J.**

## I.    INTRODUCTION

This appeal stems from an Industrial Accident Board's (the "Board") decision denying Appellant John Baxter's petition appealing a utilization review ("UR") decision and petition to determine additional compensation due for his total knee replacement surgery. Because the Court is unable to conclude whether the Board considered the exhaustion of all reasonable conservative measures as to Baxter's treatment, the Board's decision is **REVERSED AND REMANDED.**

## II.    FACTUAL AND PROCEDURAL HISTORY

On May 28, 2019, Baxter injured his left upper extremity, back, and left knee falling from a ladder while working for Appellee Verizon Communications[1] ("Verizon").[2] Prior to this accident, Baxter worked for Verizon for over twenty-three years as a fiber optic cable installer.[3] Following the incident, Dr. Dellose physically examined Baxter's left knee.[4] Upon examination, Dr. Dellose found effusion of the knee, meniscus pathology, meniscal tear, an ACL sprain, arthritis and degenerative changes.[5] On August 16, 2019, Baxter underwent a left knee

---

[1] This decision reflects the name of the employer set forth in the underlying decision and used by Baxter on appeal. Without explanation, however, the Appellee refers to the employer as "Verizon Delaware LLC."

[2] The Record is cited hereinafter as "Tab at __". Tab 6 at 1. Prior to the incident, Baxter recovered from an injury to his left knee that occurred in 2002. Tab 3 at 27:12-20.

[3] Tab 7 at 4.

[4] Tab 4 at 7:1-4.

[5] *Id*. at 8:14-9:1-12.

arthroscopy surgery.[6] At Baxter's follow-up appointment, Dr. Dellose recommended Baxter participate in physical therapy for quadriceps atrophy.[7] Baxter visited Dr. Dellose again on December 19, 2019, reporting that his knee recently gave out while walking down steps causing him to fall.[8] In addition to the ibuprofen that Baxter was taking, Dr. Dellose offered Baxter a viscosupplementation injection to treat his significant arthritis underneath his kneecap.[9] On February 11, 2020, at Baxter's next appointment, Dr. Dellose found grade three changes underneath Baxter's kneecap.[10] Dr. Dellose ordered the viscosupplementation injection and noted he was now treating osteoarthritis, not meniscus pathology.[11] Shortly thereafter, Baxter had the viscosupplementation injection.[12] On May 7, 2020, at Baxter's virtual telehealth appointment, Dr. Dellose recommended Baxter continue taking ibuprofen and receive viscosupplementation and cortisone as conservative treatment measures.[13] At this time, Baxter was taking prescription medications for

---

[6] *Id*. at 14:2-11.

[7] *Id*. at 16:13-19. According to Dr. Dellose's testimony, Baxter went to physical therapy from October 11, 2019 to December 9, 2019, at Total Health & Rehab. *Id*. at 16:20-24.

[8] Tab 7 at 7.

[9] Tab 4 at 17:4-22.

[10] *Id*. at 19:11-20:1-2.

[11] *Id*. Baxter attempted to go back to work, but Verizon could not accommodate a sedentary position. *Id*. at 20:2-7.

[12] *Id*. at 20:17-23.

[13] *Id*. at 21:16-22:1-9.

pain and swelling, and using a cane and knee brace.[14]  On July 21, 2020, Baxter reported that Verizon could no longer accommodate his light duty restrictions.[15] Addressing Baxter's continued knee complaints, Dr. Dellose discussed two treatments – a cortisone injection that would provide temporary relief or total knee replacement surgery.[16]  On November 25, 2020, Baxter advised Dr. Dellose that Verizon would not allow him to return to work with physical restrictions and discussed pursuing surgery.[17]  Baxter elected total knee replacement surgery.[18]  After obtaining new counsel, Baxter saw Dr. Dellose again, on March 7, 2023 where X-Rays were taken showing progressive degenerative changes and that Baxter's knee was "bone-on-bone."[19]

While Baxter was treated by Dr. Dellose, Verizon hired its own physician, Dr. Schwartz, to examine Baxter's alleged injuries.[20]  Dr. Schwartz examined Baxter on five different occasions.[21]  Dr. Schwartz opined that Baxter's total knee replacement

---

[14] Tab 3 at 17:3-12.
[15] Tab 7 at 8.
[16] *Id*.
[17] Tab 4 at 24:12-22.  At this time, Dr. Dellose found that conservative treatment options failed and the remaining option was a total knee replacement.  *Id*. at 27:4-9. However, Verizon's expert physician, Dr. Schwartz asserts Dr. Dellose originally recommended a second arthroscopic surgery rather than a total knee replacement at that time.  Ans. Br. at 5-6.
[18] *Id*. at 23:24-24:1.
[19] *Id*. at 32:1-16.
[20] Tab 7 at 11.
[21] *Id*.

surgery was not reasonable or necessary because it is preferable to manage symptoms conservatively before proceeding with surgery. And, the Delaware Healthcare Practice Guidelines ("Guidelines")[22] outline conservative treatment measures that should be tried and documented as having failed before proceeding with surgery.[23] Specifically, he noted that Baxter's degenerative condition worsened but that his physical examination findings did not.[24] Although Dr. Schwartz acknowledged Baxter's knee was bone-on-bone in 2023, he explained that such findings did not support the need for total knee replacement surgery and Dr. Dellose failed to exhaust conservative treatment.[25]

On April 3, 2023, Verizon's insurance carrier advised Dr. Dellose that it would be submitting the proposed total knee replacement surgery through the UR process.[26] On April 17, 2023, Baxter underwent total knee replacement surgery.[27]

---

[22] Pursuant to 19 *Del. C.* § 2322C, health care practice guidelines have been adopted and recommended by the Health Care Advisory Panel to guide utilization of health care treatments in workers' compensation including, but not limited to, care provided for the treatment of employees by or under the supervision of a licensed health care provider, prescription drug utilization, inpatient hospitalization and length of stay, diagnostic testing, physical therapy, chiropractic care and palliative care. The health care practice guidelines apply to all treatments provided after the effective date of the regulation adopted by the Department of Labor, May 23, 2008, and regardless of the date of injury.

[23] Tab 7 at 12 and 16.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 2.

[27] Tab 4 at 34:10-13.

Thereafter, the UR decision determined that the total knee replacement surgery failed to comply with the Guidelines, and therefore, denied compensation for Baxter's surgery.[28]

On March 28, 2023,[29] Baxter filed a Petition to Determine Additional Compensation Due for the total left knee replacement surgery.[30] On May 2, 2023, Baxter petitioned to appeal the UR decision.[31] Both petitions were consolidated.[32] The parties stipulated the consolidated petitions be heard and decided by a Workers' Compensation Hearing Officer ("Hearing Officer") in accordance with 19 *Del. C.* § 2301B(a)(6).[33]

On September 13, 2023, the Hearing Officer heard argument regarding Baxter's appeal.[34] On October 10, 2023, the Hearing Officer denied Baxter's appeal (the "Decision").[35] The Hearing Officer accepted Dr. Schwartz's testimony over Dr. Dellose's testimony. The Decision reasoned that although Dr. Dellose maintained

---

[28] Tab 7 at 2.
[29] Baxter's Opening Brief incorrectly notes the date of filing as May 28, 2022. Op. Br. at 1.
[30] *Id.*; Tab 1.
[31] Tab 2.
[32] Tab 6 at 2.
[33] Tab 7 at 2. The Hearing Officer stands in the position of the Board when hearing a case by stipulation. *Id.*; 19 *Del. C.* § 2301B(a)(6).
[34] Tab 3. The Hearing Officer misstates the date of the hearing as September 11, 2023. *See* Tab 7 at 2. The depositions of Dr. Dellose and Dr. Schwartz were admitted as exhibits at the hearing. *See* Tab 4 and 5.
[35] Tab 7. The Decision is mistakenly dated October 11, 2022.

that he exhausted conservative treatment, including physical therapy, he did not order physical therapy for osteoarthritis. In addition, Dr. Dellose failed to pursue cortisone injections which he specifically included as a future treatment measure.[36] The Hearing Officer also found Dr. Dellose's failure to credibly explain why these treatment measures – physical therapy for osteoarthritis and cortisone injections – were not necessary to treat Baxter's benign physical examination findings.[37] In summary, the Hearing Officer found that Dr. Dellose failed to acknowledge that he did not exhaust conservative care, was not forthcoming about Baxter's physical therapy, and failed to explain why Baxter's benign physical examination findings did not warrant attempting more conservative treatment options.[38]

The Decision was mailed on October 11, 2023.[39] On November 1, 2023, Baxter appealed to this Court.[40] After briefing, the Court held oral argument.

---

[36] *Id*. at 16, 23, and 24.
[37] *Id*. at 24.
[38] *Id*.
[39] *Id*.
[40] Tab 8, Notice of Appeal.

## III.  STANDARD OF REVIEW

The Court's review of decisions from the Board is limited to examining the record for legal errors and determining whether the Board's factual findings are supported by substantial evidence.[41]  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[42]  The Court reviews questions of law *de novo* to determine whether the Board erred in formulating or applying legal precepts.[43]  A Board's decision based upon the proper legal standard is a prerequisite to the court's performance of a review to determine the existence of substantial evidence.[44]  When the law is overridden or misapplied, the appellate court will not hesitate to reverse.[45]

---

[41] *This and That Services Co. Inc. v. Nieves*, 303 A.3d 1220, 1226 (Del. 2023).

[42] *Id*. (citations omitted).

[43] *Taylor v. William Houck, Inc.*, 2008 WL 275064, at *2 (Del. Super. Jan. 31, 2008) (citing *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998); *Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1170 (Del.1990)).

[44] *New Cingular Wireless PCS v. Sussex Cnty. Bd. of Adjustment*, 65 A.3d 607, 609 (Del. 2013) (citing *Hellings v. Bd. of Adjustment*, 734 A.2d 641, 1999 WL 624114, at *2 (Del.1999) (TABLE)).  *See*, *Streets v. Tim O'Connell and Son, Inc.*,  2000 WL 1211522, at *3 n.20 (Del. Super. July 12, 2000) (holding that the Industrial Accident Board erred as a matter law and concluding that the Court does not reach whether the Industrial Accident Board's decision was supported by substantial evidence); *In re Surcharge Classification 0133 by the Delaware Comp. Rating Bureau, Inc.*, 655 A.2d 295, 296 n.1 (Del. Super. 1994) (finding that since the Court's holding turns on an issue of law, the Court does not reach the argument that the decision was not supported by substantial evidence).

[45] *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954); *see also*, *Ohrt v. Kentmere Home*, 1996 WL 527213, at *3 (Del. Super. Aug. 9, 1996); *City of Wilmington v. Clark*, 1991 WL 53441, at *3 (Del. Super. Mar. 20, 1991).

## IV.  ANALYSIS

When an employee has suffered a compensable injury, the employer is required to pay for reasonable and necessary medical services/treatment causally related to that injury.[46]  "Services rendered by any health-care provider certified to provide treatment services for employees shall be presumed, in the absence of contrary evidence, to be reasonable and necessary if such treatment and/or services conform to the most current version of the Delaware health-care practice guidelines."[47]  Under the Guidelines, knee replacement surgery is reasonable when there is "severe osteoarthritis and all reasonable conservative measures have been exhausted and other reasonable surgical options have been considered."[48]  Reasonable conservative measures are determined from the perspective of the specific claimant, not whether the treatment measures are reasonable for anyone with the claimant's condition.[49]  Accordingly, in making its reasonable and necessary determination, the Board must consider whether all reasonable conservative measures have been exhausted as to the claimant's treatment specifically.  This standard is undisputed.

---

[46] 19 *Del. C.* § 2322.

[47] 19 *Del. C.* § 2322C(6).

[48] 19 *Del. Admin. C.* § 1342-7.4.5.

[49] *See Cline v. Nemours Foundation*, 2023 WL 6622211, at *7 (Del. Super. Oct. 11, 2023).

Baxter contends, however, that the Hearing Officer erred as a matter of law by requiring him to exhaust all conservative treatment before undergoing knee replacement surgery, rather than, *reasonable* conservative treatment for his individual circumstances.[50] In response, Verizon contends the Hearing Officer applied the proper legal standard and the Decision is supported by substantial evidence given the lack of reasonable conservative care and benign physical exam findings.[51]

The Court is not confident that the Hearing Officer correctly applied the reasonability component set forth in the Guidelines. First, when referencing the Guidelines or treatment exhaustion, the Hearing Officer does not expressly use the term "all *reasonable* conservative measures." Instead, the Hearing Officer opines that the "Guidelines directs for the treating physician to document exhaustion of conservative measures before proceeding with total knee replacement surgery."[52] Then the Decision details various conservative treatment options set forth in the Guidelines.[53] The Hearing Officer concludes that "Dr. Dellose did not exhaust conservative treatment…."[54]

---

[50] Reply Br. at 4. Baxter also argues that the Decision is not support by substantial evidence.
[51] Ans. Br. at 24.
[52] Tab 7 at 20.
[53] *Id*.
[54] *Id*. at 24.

Second, the Decision lacks a subjective assessment of Baxter's individual care. At Baxter's July 21, 2020 appointment, he advised Dr. Dellose that Verizon could no longer accommodate his light duty restrictions; therefore, he was no longer working. In addressing Baxter's continued knee complaints, Dr. Dellose discussed a cortisone injection that would provide temporary relief or total knee replacement surgery. On November 25, 2020, Baxter advised that Verizon would not allow him to return to work with physical restrictions. The Hearing Officer did not explain how, or even if, it considered Baxter's employment circumstances in its evaluation of the reasonableness of the surgery. In addition, the Hearing Officer does not explain how additional treatments – physical therapy for osteoarthritis and cortisone injections – would have helped Baxter and exhausted all reasonable conservative measures.

Similarly, the Hearing Officer failed to discuss why the conservative treatment Baxter pursued did not exhaust all reasonable conservative treatment given his specific circumstances. These failures also create a question of whether the Hearing Officer properly applied the Guidelines. Accordingly, the Court cannot be confident that the Hearing Officer applied the correct standard in determining whether Baxter's surgery was reasonable and necessary. Specifically, the Court is not confident that the Hearing Officer determined whether Baxter exhausted all reasonable conservative treatment suitable for him.

11

## V.    CONCLUSION

For the foregoing reasons, the Court is unable to conclude that the Board's Decision was free from legal error and supported by substantial evidence. Therefore, the Board's Decision is **REVERSED** and **REMANDED** to the Board for further proceedings consistent with this Memorandum Opinion.


**IT IS SO ORDERED.**


*/s/Patricia A. Winston*
**Patricia A. Winston, Judge**